**COVINGTON**

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Arlo Devlin-Brown

Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T +1 212 841 1046
adevlin-brown@cov.com

October 23, 2019

By ECF
Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

>    Re:    *United States v. Mark S. Scott*,  S10 17 Cr. 630(ER)
>           Comments On Government's Request To Charge / Bank Fraud

Dear Judge Ramos:

      We write on behalf of Mark Scott, the defendant, to provide comments on the Government's request to charge. For most part, we have no objection, or only limited proposed modifications, to charges proposed by the Government.  We have attached a documents hereto as Exhibit A reflecting proposed changes from the defense in redline, accompanied by notes where necessary identifying the basis for such proposed changes.

      We expect to oppose a "conscious avoidance" charge and would propose to detail our opposition after the close of the Government's case based on the factual record developed at that point.  In the event such a charge is given, we believe it should be accompanied by a corresponding "good faith" charge that should be given in conjunction.  We may also submit a defense theory charge at that time.  To the extent developments at trial suggest the need for other charges or further proposed modifications to the Government's proposed charge, we will address those as well.

      Reviewing the Government's request to charge and other recent developments have heightened our concerns about the Bank Fraud conspiracy count added by the Government to the S10 indictment returned on October 8, 2019.  There is a real danger that without careful policing during the trial, the jury will understand the bank fraud charge as a *more sweeping* version of the a money laundering charge, covering any false statement to a financial institution designed to move money in or out of bank accounts and *without* the need for the Government to prove that Mr. Scott knew that the money moved was proceeds of a crime.  The reality is that bank fraud under 18 U.S.C. § 1344 is considerably narrower in key respects, including that it only covers only FDIC banks.  Mr. Scott outlines these concerns below both so the Court can address issues that may arise during the trial, and to request that the Court require the Government to prove that

COVINGTON

the object of the Bank Fraud conspiracy involved one or more of the identified accounts and transactions at the three banks identified in response to a request for particulars.

The Bank Fraud Statute

The elements of bank fraud are contained in Title 18 United States Code section 1344. Title 18 United States Code section 1344 provides that:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
> (1) to defraud a financial institution; or
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both. 18 U.S.C. § 1344. The term financial institution reaches banks insured by the Federal Deposit Insurance Corporation ("FDIC").

The scheme or artifice can be directed at depriving either the financial institution or the customer of its property interest in the requisite account. *See Shaw v. United States,* 137 S. Ct. 462, 467 (2016) ("for purposes of the bank fraud statute, a scheme fraudulently to obtain funds from a bank depositor's account normally is also a scheme fraudulently to obtain property from a 'financial institution[]'"). *See also Bascunan v. Elsaca,* 927 F.3d 108, 124 (2d Cir. 2019) ("[T]he conduct that § 1344(2) seeks to regulate, and its focus, is a scheme to obtain property owned or controlled by a bank under false or fraudulent pretenses.").

The Superseding Indictment & Particulars Letter

Count Two of the Superseding Indictment[1] alleges that Mr. Scott:

> would and did execute and attempt to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation ("FDIC"), and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institutions, by means of false and fraudulent pretenses, representations, and promises, *to wit, SCOTT and others misrepresented and omitted material facts to banks and other financial institutions worldwide to cause those financial institutions, including FDIC-insured financial institutions in the United States, to transfer funds into and out of accounts associated with purported investment funds operated by SCOTT and others, in violation of Title 18, United States Code, Section 1344.* (emphasis added)

The charge on its face is extraordinarily vague, alleging a far-reaching conspiracy to involving both SCOTT and unspecified "others" making misrepresentations of material fact to

2

COVINGTON

unidentified "banks and financial institutions worldwide" aimed at causing these unspecified "financial institutions, including FDIC-insured financial institutions in the United States" to "transfer funds into and out of" unidentified "accounts associated with purported investments funds operated by Scott and others." In short, the Superseding Indictment alleged that unspecified false statements made by Scott and others were introduced into the global financial system through various entities including foreign banks that are *not* financial institutions under the Bank Fraud statute somehow making their way to FDIC insured banks which made transfers of certain funds that were the object of the scheme.

In response to a request for particulars, the Government provided the following detail with respect to the charged bank fraud conspiracy:

> The bank fraud conspiracy alleged in Count Two of the Indictment involves a scheme by the defendant and others to make and cause to be made misrepresentations to numerous financial institutions worldwide regarding the source of funds, purpose of wire transfers, and other relevant information in connection with transfers of monies into and out of the purported "Fenero" investment funds operated by the defendant (the "Fenero Funds"). While the Government has no obligation to prove any particular transaction or misrepresentation, these transactions include, but are not limited to: (1) two wire transfers in or about June 2016 totaling approximately $5 million from a U.S. Morgan Stanley account in the name of "Fates Group LLC" to a Fenero Fund account in the Cayman Islands, purported to be an investment into the Fenero Funds; (2) a wire transfer in or about July 2016 of approximately $30 million from a Fenero Fund account in the Cayman Islands, through a Bank of New York Mellon correspondent account in New York, to a Hong Kong account in the name of "Barta Holdings Limited," purported to be an outbound investment from the Fenero Funds in the form of a "loan"; and (3) a wire transfer in or about September 2016 of approximately $5 million from a U.S. Sabadell United Bank account in the name of "Fates Group LLC" to a Fenero Fund account in the Cayman Islands, purported to be an investment into the Fenero Funds.

*See* Exhibit B, attached (provided under seal at request of the Government due to other information contained therein).

Discussion

As the Court is aware, the evidence against Mr. Scott involves almost exclusively his dealings with off-shore banks and financial institutions, not institutions insured by the FDIC. The Fenero Funds Mr. Scott controlled that allegedly received proceeds of a OneCoin wire fraud scheme had relationships with the Bank of Ireland, DMS Bank in the Cayman Islands and other non-U.S. financial institutions. The Government has repeatedly represented that Mr. Scott made various false statements to these non-U.S. financial institutions directly or through intermediary

COVINGTON

fund managers such as Apex in order to convince these non-U.S. banks to accept funds from his investors and to make investments and other financial transactions through these accounts. Such conduct would not be bank fraud, however, absent (among other things) a "scheme or artifice" to defraud an *FDIC insured bank* or obtain money from a customer of such a bank. There is a real risk that the jury, unless carefully instructed and not misled by the Government, at any stage will believe that alleged lies to Apex or non-U.S. banks alone could constitute bank fraud.

This risk is not hypothetical. In its Proposed Examination of Jurors the Government invites the Court to give an erroneous description of the Bank Fraud conspiracy count in just this way. The Court is requested to tell the jury that Mr. Scott is charged with "conspiracy to commit bank fraud by misrepresenting and omitting material facts to bank and other financial institutions worldwide to cause those financial institutions to transfer funds.." Missing is the crucial element that the institutions that are the object of such a scheme *must be the U.S. FDIC institutions.*

It is important that the Court not permit the Government to conflate in its jury addresses or witness examinations "lying to banks" around the world with the more limited concept of bank fraud conspiracy required under 18 U.S.C. § 1344, which requires a scheme directed at FDIC banks or their accounts. The Government should also be held to its letter in response to Mr. Scott's particulars request to proving that the conspiracy involved at least one of the specific accounts and transfers at the three U.S. financial institutions it has identified. An appropriate jury instruction consistent with the Government's proof can then be provided in the final instructions to the jury making clear the FDIC institutions, accounts, and transfers at issue in the bank fraud conspiracy. Holding the Government to its particulars response is also essential to avoid a constructive amendment and to permit Mr. Scott to prepare to defend against what would otherwise be a sweepingly broad charge leveled against him only a month before trial.

Respectfully Submitted,

/s Arlo Devlin-Brown
Arlo Devlin-Brown

cc:   Government Counsel