# COVINGTON

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Arlo Devlin-Brown

Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T  +1 212 841 1046
adevlin-brown@cov.com

October 27, 2019

By ECF
Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   ***United States v. Mark S. Scott***,  S10 17 Cr. 630(ER)
Opposition to Government's Motion To Preclude The Defense From Offering
Additional Portion of Mr. Scott's Post-Arrest Statement

Dear Judge Ramos:

We write on behalf of Mark Scott, the defendant, in conjunction with the Government's
motion to preclude the defense from offering additional portions of Mr. Scott's videotaped post-
arrest statement.  Mr. Scott submits that certain limited additions to the portions of the recorded
statement should be admitted pursuant to the common law rule of completeness as well as
Federal Rules of Evidence 106 and 611(a).   Without these additions, the introduction of the
Government's excerpts would present a misleading view to the jury of what Mr. Scott told the
agents on three subjects: (1) his awareness of Ruja Ignatova's relationship with the investors in
the Fenero Funds; (2) Gilbert Armenta's investment in the Fenero Funds; and (3) his
understanding of OneCoin.  Attached as Exhibit A to this application, submitted under seal, is a
version of the Government's draft transcript with green highlight to identify the relevant
proposed additions on top of the portions of the statement the Government seeks to admit, which
are reflected as in the Government's submission in yellow highlighting.

### Applicable Law

In July of this year, the  Second Circuit discussed in some detail the standard to be
applied to a defendant's request to introduce portions of a post-arrest statement pursuant to the
rule of completeness and related standards, making clear the doctrine extends beyond the
confines of Federal Rule of Evidence 106.  *See United States v. Williams*, 930 F.3d 44 (2d. Cir.
2019).

Rule 106 provides that "[i]f a party introduces all or part of a writing or recorded
statement, an adverse party may require the introduction, at that time, of any other part – or any
other writing or recorded statement – that in fairness ought to be considered at the same time."

**COVINGTON**

"The purpose of the rule is to correct, contemporaneously, the 'misleading impression created by taking matters out of context,' Fed. R. Evid. 106 advisory committee note (1972 Proposed Rules), and the rule 'requir[es] generally that adversaries be allowed to prevent omissions that render matters in evidence misleading,' *Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 111 (2d Cir. 2012); *see United States v. Castro*, 813 F.2d 571, 575–76 (2d Cir. 1987) (noting that adverse party can demand that an omitted portion 'be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion'); *accord United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982)." *Id.* at 58.

The *Williams* Court made clear that "the common law rule of completeness is substantially broader than Rule 106, covering 'not only writings taken out of context, but also ... the truncated use of acts, declarations, and conversations.'" *Id.* at 59, (citing 21A Kenneth W. Graham, Jr., Federal Practice and Procedure § 5072 (2d ed. 2015). This "common law doctrine persists in the wake of Rule 106's adoption." *Id. See also Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171–72,); 21A Graham, supra, § 5073 n.1 (stating that *Beech Aircraft* "held that adoption of Rule 106 did not repeal the common law completeness doctrine; hence, that doctrine can be invoked for completeness where Rule 106 does not apply").

In addition to Rule 106 and the common law rule of completeness, the Second Circuit "has expressly recognized as to oral statements that Fed. R. Evid. 611(a) both 'empowers and obligates' district courts to require 'a party offering testimony as to an utterance to present fairly the substance or effect and context of that statement,' just as the common law doctrine requires." *Id.* (citing *Castro*, 813 F. 2d at 576). The "overarching principle" is that "it is the trial court's responsibility to exercise common sense and fairness" in evaluating the introduction of additional portions of a statement. *Id.* (internal citations omitted).

<u>Discussion</u>

The Government is expected to argue at trial – as it has in its motions – that Mr. Scott lied both to financial institutions and federal agents about the investors in the Fenero Funds, particularly the relationship of the fund investors to Ruja Ignatova and OneCoin. The Government has cherry-picked portions of Mr. Scott's post-arrest statement to support this argument, making it appear that he told the agents virtually nothing about his awareness of the Ignatova/OneCoin connection when in fact he said a great deal. Given that much of the Government's case is premised on Mr. Scott's supposed effort to hide the relationship between Ignatova/OneCoin and the Fenero Fund investors, it is crucial the his complete statements on these subjects be admitted.

Accordingly, the following eight Defense Additions (highlighted in green in accompanying Exhibit A) should be included under the rule of completeness should the Government seek to admit the identified portions of the post-arrest statement.

**COVINGTON**

- Defense Addition 1 (7:39:32 – 7:40:59). The Government includes multiple statements Mr. Scott made about Ruja Ignatova at various places in the post-arrest statements[1], but leaves out others, creating a misleading impression through those excerpts that Mr. Scott was reluctant to provide any detail about Ms. Ignatova. On pages nine to ten (7:37:15 – 7:39:08), Mr. Scott discusses, an investment from "Irina" at B&N"[2] adding that she was introduced by "umm, uhh, Ruja." The Government then proposes to abruptly end Mr. Scott's description of Ruja and her engagement of Locke Lord, cutting Mr. Scott's statement off mid-sentence. Doing so falsely suggests that that Mr. Scott gave only a vague description of Ruja Ignatova and was unwilling to speak about her or her connection to the money laundering offense he had been charged with, when Mr. Scott in fact provides a further description immediately after the Government excerpt ends. *Mr. Scott therefore seeks to admit his complete description of Ms. Ignatova immediately below, from 7:39:32 to 7:40:59.*

- Defense Addition 2 (7:54:38 – 7:55:14). On pages 19-20 (7:53:08 – 7:54:38), the agents elicit that Gilbert Armenta introduced Mr. Scott to Ms. Ignatova. The agents then ask if Mr. Armenta was "an investor in Fenero or in any of the other companies." Mr. Scott starts to answer "yes" and then immediately clarifies that with "But umm, I have to give a but…," making it clear that his answer was not in fact an unequivocal "yes," as the Government would have it. He then mentions some "red flag" had come up and he returned the funds Mr. Armenta sent. The Government's excerpt cuts Mr. Scott off mid-explanation creating the erroneous impression that Mr. Armenta successfully invested when in fact he stated that investment was rejected and the funds were returned. *Mr. Scott therefore seeks the inclusion of the time period from 7:54:38 through 7:55:14.*).

- Defense Additions 3, 4 and 5. On pages 29-30 (8:17:23 to 8:18:21) the agents ask Mr. Scott a series of questions about what he knows about OneCoin and its reputation. The Government then selectively excerpts Mr. Scott's statements on what he knew about OneCoin to create the objectively false impression that all Mr. Scott knew about OneCoin was negative information. The following additions are necessary to correct this misimpression:

    o Defense Addition 3 (7:57:116 – 7:58:42). The Government does not include Mr. Scott's explanation of the role Locke Lord played in representing Ms. Ignatova, including Mr. Scott's statement that he "relied on" an analysis by a Locke Lorde colleague he considered to be a crypto excerpt. *This excerpt should be included.*

    o Defense Addition 4 (8:18:21 – 8:18:55). At 8:18:14 Agent Eckel says to Mr. Scott: "So you never heard of OneCoin besides reading about it in the press?" Mr. Scott's actual answer is "No I heard about OneCoin. *That's why, when I, at the beginning I like I said when I knew the relationship between her and OneCoin is*

---

[1] *See, e.g,* 15-18 15 (7:47:35 – 7:51:14) (in which Mr. Scott answers questions about how many times he has met Ms. Ignatova and how he has communicated with her).

[2] The draft transcript spells Irina's name incorrectly and says "BNN" rather than "B&N," which the defense will address with the Government.

**COVINGTON**

*when I basically asked for the opinion of which country or if at all any country OneCoin was illegal, or, or, you know banned or whatever so then we wouldn't do business with them.*  You know there was rumors were going around, pyramid scheme and all that and we didn't want to be involved with that."  The Government proposes to delete the middle sentence of Mr. Scott's response (italicized) so that his answer would be: "No I heard about OneCoin.  You know there was rumors were going around, pyramid scheme and all that and we didn't want to be involved with that."  This would dramatically change the meaning of Mr. Scott's answer whereas the full answer would make clear that Mr. Scott's reference to "rumors" relates to why he sought a legal opinion in the sentence the Government proposes to cut.

     ○  <u>Defense Addition 5 (8:22:24-8:24:10).</u>  At 8:22:24, Mr. Scott further makes clear that he did diligence on OneCoin, noting he had at the time "purposefully checked out that there was nothing illegal going on.  There was no investigation, there was no investigation, there was nobody indicted, or anything like that."  *Mr. Scott's answer at 8:22:24 should therefore be included to make clear the totality of what he told the agents he know about OneCoin at the time of the charged events.*

- <u>Defense Addition 6 (8:21:03 – 8:24:10).</u>  On pages 30 and 31 from 8:18:55 through 8:20:43, the agents ask Mr. Scott about his understanding of One Coin's relationship with Fenero Funds and ask whether he stopped doing business with a particular company he found had a OneCoin connection. After an interjection by an agent that Mr. Scott has an "opportunity to help himself" and in invitation for Mr. Scott to continue his answer, Mr. Scott does just that and expands on why for some period he was  willing do business with OneCoin affiliates.  *The entirety of this exchange, from 8:21:03 through 8:23:13 should be included.*  (This also includes excerpt 5).

- <u>Defense Addition 7 (8:26:46 – 8:28:41).</u>  On page 34, at 8:26:42, the agents ask Mr. Scott a leading question: "And OneCoin and Ruja had nothing to do with Fenero or any other funds that you were involved in?"  Once again, the Government proposes to include only part of Mr. Scott's answer to that single question, creating a misleading impression.  Specifically, Mr. Scot responds "No. No… the name wouldn't come up" and then clarifying – in the portion of the answer the Government proposes removing – that he was focused on the names that would appear on the KYC and subscription agreements while acknowledging  that "Ruja [was] there in some capacity."  *The entirety of Mr. Scott's answer to the question posed by Agent Eckel should be included.*

- <u>Defense Addition 8 (8:28:59 – 8:30:39).</u>  On page 34, at 8:28:41, the agents ask Mr. Scott "What were your fees?"  Mr. Scott responds using the word "we" which prompts an agent to interject that "[y]ou keep saying the word we… 'cause you were the sole person…[y]ou're, you're the guy," to which Mr. Scott agrees.  When Mr. Scott moves beyond this interjection explain the fee question the agents posed the Government proposes to remove his answer.  *Mr. Scott's answer to the question posed by the agents, at 8:30:39 should be included.*

**COVINGTON**

Accordingly, Mr. Scott requests that the Court require the inclusion of the eight additions identified in connection with the Government's proposed excerpts of his post-arrest statement.

Respectfully Submitted,

/s Arlo Devlin-Brown
Arlo Devlin-Brown

cc:      Government Counsel