

ARLO DEVLIN-BROWN
Managing Principal
+1 (212) 858-9080 w
arlo@tdblaw.com

August 25, 2025

The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

Re: *United States v. Scott*, No. 17-cr-630-1

Dear Judge Ramos:

On July 21, 2025, Defendant Mark Scott filed a Petition for Writ of Certiorari (the "Petition") with the Supreme Court seeking reversal or vacatur of the January 31, 2025 judgment of the Court of Appeals for the Second Circuit affirming Mr. Scott's convictions and sentence. Ex. A. In the Petition, Mr. Scott argues that he is entitled to a new trial in light of the February 25, 2025 decision in *Glossip v. Oklahoma*, 145 S. Ct. 612 (2025), in which the Supreme Court reversed the petitioner's conviction and granted a new trial on the grounds that the prosecution knowingly elicited false testimony at trial from a cooperating witness in violation of *Napue v. Illinois*, 360 U.S. 264 (1959). Ex. A at 11–12; *see also Glossip*, 145 S. Ct. at 626–30. The Petition is currently scheduled to be discussed at the Supreme Court's September 29, 2025 conference.

Because the Petition raises substantial questions that, if resolved in Mr. Scott's favor, would require a new trial, Mr. Scott respectfully requests that this Court order him released on bail pending resolution of the Petition, and if the Petition is granted, pending resolution of the Supreme Court's ruling, subject to all current conditions of release. The Petition is currently scheduled to be discussed at the Supreme Court's September 29, 2025 conference and Mr. Scott's existing surrender date is September 15th, so this adjournment will likely be modest if the cert petition is denied.[1]

[1] As the Court knows, Mr. Scott is in the process of obtaining a diagnosis and treatment of a significant medical issue, which was the basis of prior adjournments. Mr. Scott may seek a further adjournment of his surrender date based on his medical needs based on current testing and recommended treatment but will write to the Court separately on that issue if needed.

## I. LEGAL STANDARD

The Bail Reform Act provides that a court "shall order the release" of "a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed . . . a petition for a writ of certiorari" if the court finds that four conditions are met. 18 U.S.C. § 3143(b).[2] First, the defendant "is not likely to flee or pose a danger to the safety of any other person or the community if released." *Id.* § 3143(b)(1)(A). Second, "the appeal is not for the purpose of delay." *Id.* § 3143(b)(1)(B). Third, the appeal "raises a substantial question of law or fact," *id.*, meaning a question "of more substance than would be necessary to a finding that it was not frivolous," or "a 'close' question or one that very well could be decided the other way," *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985) (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)). Fourth, that question, if determined favorably to the defendant on appeal, is "likely to result in" reversal, a new trial, a noncustodial sentence, or a sentence that is less than time served plus the expected duration of the appeal. 18 U.S.C. § 3143(b)(1)(B).

Although the defendant must establish by clear and convincing evidence that he is not a flight risk or danger to the community, *id.* § 3143(b)(1)(A), he need only establish the other three factors by a preponderance of the evidence. *United States v. Galanis*, 695 F. Supp. 1565, 1566 (S.D.N.Y. 1988); *see also United States v. Affleck*, 765 F.2d 944, 953 n.15 (10th Cir. 1985). If the defendant demonstrates that these conditions are satisfied, the court "shall order" his release. 18 U.S.C. § 3143(b)(1).

## II. DISCUSSION

Mr. Scott readily meets all four factors set out in § 3143(b).

### A. Mr. Scott Is Not a Flight Risk or Danger to the Community

Mr. Scott has been fully compliant with his post-trial conditions of release for over five years, both before and after his January 2024 sentencing. He is currently subject to home incarceration and location monitoring, and he has surrendered his passport and any other travel documents. Dkt. 259 (bail conditions). And as documented in sealed letters dated May 19, 2025 and July 14, 2025, Mr. Scott is continuing to receive treatment for a variety of serious medical conditions with his Florida-based doctors. Fleeing would mean interrupting or halting ongoing medical testing and treatment for those conditions.

This Court has repeatedly held that Mr. Scott is not a flight risk or danger to the community under these circumstances. *See* Dkt. 252 (March 30, 2020 bail order); *United States v. Scott*, No. 17-CR-630 (ER), 2024 WL 1676633, at *3 (S.D.N.Y. Apr. 18, 2024) (granting bail pending appeal). Indeed, in granting Mr. Scott bail pending appeal last year, this Court cited Mr.

[2] Courts apply § 3143(b) when the defendant seeks either bail pending appeal or bail pending the disposition of a petition for certiorari. *See, e.g.*, *United States v. Snyder*, 946 F.2d 1125, 1126 (5th Cir. 1991) (holding that a defendant "asking to be released while his petition for certiorari is pending, . . . falls squarely under 18 U.S.C.A. § 3143(b)").

Scott's "medical conditions" to conclude that Mr. Scott was not a flight risk. *Scott*, 2024 WL 1676633, at *3. And this Court also agreed that Mr. Scott, who "has not been charged with a violent crime," is not a danger to others. *Id.* Nothing here has changed. Because there is no realistic prospect that Mr. Scott will flee or pose any danger to the community, he readily satisfies the first factor.

**B. The Petition Is Not for the Purpose of Delay**

As discussed below, Mr. Scott's Petition raises substantial appellate arguments that, if accepted, will require a new trial. Those arguments are timely, are raised in good faith, and are premised on the Supreme Court's February 25, 2025 decision in *Glossip*, which post-dates by several weeks the Second Circuit panel's judgment affirming Mr. Scott's convictions. On March 17, 2025, Mr. Scott filed a petition for rehearing *en banc* and/or panel rehearing with the Second Circuit that was premised, in part, on *Glossip*—relief which the court of appeals rarely grants. The Second Circuit denied Mr. Scott's petition for rehearing on April 21, 2025. *United States v. Scott*, No. 24-368, Dkt. 93.1. In short, there is no evidence of "dilatory tactics" by the defense. *United States v. Archer*, 813 F. Supp. 2d 339, 344 (E.D.N.Y. 2010). Moreover, this Court has previously rejected that Mr. Scott's application for bail pending appeal was for the purpose of delay. *Scott*, 2024 WL 1676633, at *3. As discussed below, the Supreme Court's decision in *Glossip* is at a minimum in significant tension with the Second Circuit precedent on witness perjury that that Court relied on in denying Mr. Scott's application for a new trial. Mr. Scott therefore satisfies the second factor.

**C. The Petition Presents Substantial Questions of Law and Fact**

In light of the intervening Supreme Court decision in *Glossip*, Mr. Scott's Petition presents a substantial question that the Second Circuit panel's judgment affirming his convictions should be reversed and that Mr. Scott should be granted a new trial.

As this Court found last year when granting Mr. Scott bail pending appeal, a "substantial question" under 18 U.S.C. § 3143(b),

> does not require the "trial court to certify that it is likely to be reversed." [*Randell*, 761 F.2d at 125] (internal quotation marks and citation omitted). Rather, appeals may raise substantial questions of law or fact even if success on appeal is "doubtful" but "not impossible." *United States v. Kaufman*, No. 19-cr-0504 (LAK), 2021 WL 8055691, at *3 (S.D.N.Y. Oct. 27, 2021). The question is whether the issues on appeal are frivolous. *Id.*

*Scott*, 2024 WL 1676633, at *3. Indeed, the court does not need to "predict the probability of reversal" at all. *United States v. Silver*, 203 F. Supp. 3d 370, 376–77 (S.D.N.Y. 2016) (quoting *Randell*, 761 F.2d at 124). Courts in this district have repeatedly granted bail under § 3143(b)

even when they have viewed the defendants' arguments as unmeritorious.[3] Mr. Scott's Petition readily meets this low bar.

By way of background, the Government charged Mr. Scott with money-laundering conspiracy and bank-fraud conspiracy because of his involvement with Ruja Ignatova and the fraudulent cryptocurrency known as OneCoin. The central issue at trial was whether Mr. Scott knew that OneCoin was a fraud. To establish Mr. Scott's knowledge, the government called Ruja's brother, Konstantin Ignatov, to testify pursuant to a cooperation agreement. Trial Tr. at 125, 208–12. Konstantin was the Government's star witness: He was the sole cooperating witness and the only participant in the OneCoin fraud who testified about interacting with Mr. Scott. Konstantin repeatedly told the jury that Mr. Scott "was one of the main money launderers for OneCoin" and "for Ruja." Trial Tr. at 130, 228.

But Konstantin's trial testimony was false in multiple respects. First, Konstantin lied about his destruction of a OneCoin laptop in 2019—testimony which the Government concedes is perjury. Dkt. 412 at 20–21 & n.3. Second, Konstantin repeatedly gave false testimony about a July 20, 2016 meeting in Bulgaria between Mr. Scott, Ruja, and Irina Dilkinska—whom Konstantin described as OneCoin's head money launderer. Trial Tr. at 131. Konstantin testified in detail that Ruja instructed him to call Dilkinska into the meeting with Mr. Scott and then to "make sure that everybody on [the] floor leaves and goes home so that Irina, Mark, and Ruja are alone," and that Dilkinska said "she had to stay [at the meeting] a long time" until Mr. Scott "understood everything . . . he ha[d] to do[.]" *Id.* at 245–47. But this testimony was false: As her passport makes clear, Dilkinska was in India when Mr. Scott was in Bulgaria. *See* Dkt. 433 at 4; Dkt. 434-11.

In September 2023, this Court denied Mr. Scott's motions for a judgment of acquittal and a new trial premised on, *inter alia*, Konstantin's perjury, concluding that there was no "reasonable likelihood" that the perjury affected the verdict. *United States v. Scott*, No. 17-CR-630 (ER), 2023 WL 6064329, at *14–17 (S.D.N.Y. Sept. 14, 2023). Reviewing only for abuse of discretion, a panel of the court of appeals affirmed on the same grounds. *See United States v. Greenwood*, No. 23-7199, 2025 WL 354692, at *3 (2d Cir. Jan. 31, 2025) (summary order). But on February 25, 2025—less than a month after the panel issued its ruling—the Supreme Court reversed the petitioner's conviction in *Glossip v. Oklahoma* on the grounds that the prosecution

---

[3] *See, e.g.*, *Kaufman*, 2021 WL 8055691, at *3 (granting bail where judge deemed it "doubtful" but "not impossible" "that [the defendant] will succeed on [his appeal of] either count, let alone both"); Hr'g Tr. at 55, *United States v. Gatto*, No. 17-cr-686 (LAK) (S.D.N.Y. Mar. 5, 2019), ECF No. 297 ("I need not be persuaded that any defendant is likely to prevail. I really don't have to say much more than that the arguments are not on their face ridiculous."); Hr'g Tr. at 67, *United States v. Allen*, No. 14-cr-272 (JSR) (S.D.N.Y. Mar. 10, 2016), ECF No. 242 (granting bail pending appeal despite the district court's belief that "[there is] no issue on appeal," because issue raised was "not without some appellate interest"); *United States v. Rittweger*, No. 02-cr-122 (JGK), 2005 WL 3200901, at *4 (S.D.N.Y. Nov. 30, 2005) (court need not agree that appeal "will ultimately succeed or . . . has merit").

introduced false testimony from a cooperating witness. 145 S. Ct. at 626–30. As outlined in the Petition, *Glossip* conflicts with the panel's ruling in at least two ways.

*First*, the Supreme Court in *Glossip* clarified that a conviction based on testimony that the prosecution knew was false cannot stand unless the Government can prove "beyond a reasonable doubt" that the error did not contribute to the verdict, 145 S. Ct. at 627 (quoting *United States v. Bagley*, 473 U.S. 667, 680 n.9 (1985) (opinion of Blackmun, J.) —the "most stringent standard" in American criminal law, *Barnes v. United States*, 412 U.S. 837, 845–46 (1973). Ex. A at 13–14. Here, neither the panel nor this Court required the government to prove beyond a reasonable doubt that Konstantin Ignatov's perjury did not affect the verdict against Mr. Scott, as *Glossip* requires. *Id.* Under the clarified beyond-a-reasonable-doubt standard, Mr. Scott is entitled to a new trial. Konstantin was the Government's only cooperating witness, and Konstantin alone testified that Mr. Scott was "one of the main money launderers for OneCoin." Trial Tr. at 130. And as discussed above, Konstantin testified falsely about Mr. Scott's purported lengthy meeting under suspicious circumstances with Ruja and Irina Dilkinska—OneCoin's head money launderer—in which Dilkinska purportedly explained to Mr. Scott "everything . . . he ha[d] to do[.]" *Id.* at 245–47. Given the centrality of Konstantin's testimony to the key question at trial—whether Mr. Scott knew OneCoin was a fraud—there is at least a reasonable doubt whether, had the jury heard evidence that Konstantin extensively lied on the stand twice, at least one juror would have declined to convict. *See* Ex. A at 15–16.

*Second*, the Supreme Court in *Glossip* rejected the argument—adopted by the panel here—that evidence of a witness's false testimony is immaterial where the witness's credibility was called into question at trial. Here, the panel concluded that, because Konstantin was "extensive[ly]" impeached at trial, evidence revealing that his trial testimony was false would have amounted to mere "cumulative impeachment material," and thus would not have affected the verdict. *Greenwood*, 2025 WL 354692, at *3 (quoting *Scott*, 2023 WL 6064329, at *15, *17). But in *Glossip*, the court-appointed *amicus* supporting affirmance made an identical argument: that a cooperating witness's perjured testimony "could hardly have" impacted the verdict because the witness had already been substantially impeached at trial. 145 S. Ct. at 629. The Supreme Court rejected that position as "self-defeating," explaining that if the evidence impeaching the witness's credibility had been so "overwhelming," then "no reasonable jury could have convicted Glossip in the first place, given that the prosecution's case rested centrally on [the witness's] credibility." *Id.* Applying the clarified materiality standard, the Supreme Court observed that a "midtrial revelation that [the witness] lied on the stand would have significantly undercut" the prosecution's argument that, despite "his prior dishonesty and violence, [the witness] was now telling the truth." *Id.* Here, as in *Glossip*, had Konstantin been caught in two outright lies to the jury, it is entirely possible that the jury would have discounted his entire testimony. *See* Ex. A at 18. At the least, it cannot be said that a jury confronted with a twice-caught perjurious witness would beyond a reasonable doubt have returned a guilty verdict.

### D. The Issues Are Integral to Mr. Scott's Convictions

Resolution of these issues in Mr. Scott's favor would result in "reversal" or "an order for a new trial." 18 U.S.C. § 3143(b)(1)(B). *Glossip* itself confirms that the ordinary remedy for an introduction-of-false evidence claim under *Napue* is reversal of the defendant's conviction and a new trial. 145 S.Ct. at 618, 630. And Mr. Scott's Petition explicitly asks the Supreme Court to reverse the panel's ruling. Ex. A at 14, 19.

Moreover, even if the Supreme Court issued a grant-vacate-remand ("GVR") order—*i.e.,* an order granting the Petition, vacating the panel's ruling, and remanding to the court of appeals to reconsider its decision in light of *Glossip*—that would restore these proceedings to the status quo for which this Court has already granted Mr. Scott bail pending appeal. *See Scott*, 2024 WL 1676633, at *3 (concluding that Mr. Scott's arguments are "sufficiently integral to the merits of Scott's conviction that a contrary appellate holding could likely require a reversal or new trial on all of the counts for which Scott has been imprisoned"). In other words, if the Supreme Court issued a GVR order, Mr. Scott would continue to seek a new trial from the court of appeals premised on his witness-perjury claim and *Glossip*. Thus, no matter how the Supreme Court addresses the Petition, Mr. Scott's arguments—if successful—satisfy § 3143(b)(1)(B) because they warrant the ultimate relief of reversal and a new trial.

## III. CONCLUSION

For these reasons, Mr. Scott respectfully requests that this Court order him released on bail pending the resolution of his Petition, subject to all current conditions of release.

Respectfully submitted,

/s/ Arlo Devlin-Brown

Arlo Devlin-Brown
Treanor Devlin Brown PLLC
arlo@tdblaw.com
(646) 596-4564

Counsel for Defendant
Mark S. Scott